**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
NORTHERN DIVISION**

| | | |
|---|---|---|
| Brian D. Rice | * | |
| 1367 Ridge Commons Boulevard | | |
| Hanover, Maryland  21076 | * | |
| | | |
| Plaintiff, | * | |
| | | |
| vs. | * | Case No. 13-1612 |
| | | |
| Sotera Defense Solutions, Inc. | * | **Jury Demand Enclosed Herein** |
| 7230 Lee DeForest Drive | | |
| Suite 100 | * | |
| Columbia, Maryland 21046-2350 | | |
| | * | |
| Served on: | | |
| Sotera Defense Solutions, Inc. | * | |
| C/O CSC-Lawyers Incorporating Service Co. | | |
| 7 St. Paul Street | * | |
| Suite 1660 | | |
| Baltimore, MD 21202 | * | |
| | | |
| Defendant. | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \*

## COMPLAINT

### I. PRELIMINARY STATEMENT

1. This action is brought to remedy retaliation in violation of the False Claims Act ("FCA"), 31 U.S.C. Section 3730(h) against Sotera Defense Solutions, Inc. "Sotera").

### II. JURISDICTION AND VENUE

2. Jurisdiction of this Court is invoked pursuant to 28 U.S.C. Section 1331.

3. Venue is proper in the Northern Division of the District of Maryland because the causes of action in this Complaint occurred in Columbia, Maryland, situated within said District and Division.

### III.    PARTIES

4.     Plaintiff Brian Rice is a citizen of the United States and a resident of the State of Maryland. At all times relevant hereto, Mr. Rice has resided at 1367 Ridge Commons Boulevard, Hanover, Maryland 21076.

5.     Defendant Sotera, a Delaware Corporation, with its headquarters in the Commonwealth of Virginia, operated a business in the State of Maryland. Sotera is a national security technology company.

### IV.    STATEMENT OF FACTS

6.     On April 5, 2013, Lisa Broome, Senior Vice President of Human Resources, informed Mr. Rice that he was reassigned to the SSES NexGen contract as an overhead employee. On May 2, 2013, Devin Edwards, Senior Director of Mission Analytics and Technology, revoked Mr. Rice's NSA-issued Top Secret/Special Intelligence green contractor identification badge ("NSA TS/SI Badge"). On May 3, 2013, Tracy Buchanan, Administrative Assistant and Timesheet Administrator, informed Mr. Rice that Sotera was resassigning him to a bench overhead position (an even lower type of overhead employee) at the direction of Gary Richmond, Senior Director of Operations and Integration, and Dan Haug, Vice President. The facts demonstrate that Mr. Rice's reassignments and the revocation of his NSA TS/SI badge are the result of retaliation against him for complaining about a violation of the False Claims Act.

7.     Mr. Rice began working for the company as a Program Manager on October 8, 2012. Mr. Rice holds a Top Secret/Special Intelligence security clearance. On January 31, 2013, he was promoted to Director of Mission Analytics & Technology ("MA&T") and continued working in that position until the reassignment on April 5, 2013. Mr. Rice has performed satisfactory work, receiving a promotion, bonuses, and commendations. The January 31, 2013,

promotion announcement stated, "In the short amount of time that Brian has been here, Brian has been directly responsible in our ability to make tremendous strides in building up our program and internal infrastructures." Prior to beginning work for Sotera, Mr. Rice performed project management work for more than 15 years (including work for the military), has been part of the intelligence community for more than 20 years, worked on multi-million dollar deals, and received favorable evaluations, salary increases, promotions, bonuses, commendations, and awards. Despite Mr. Rice's favorable performance and qualifications, on April 5, 2013, Sotera reassigned Mr. Rice to an overhead position.

8. In Spring 2013, Mr. Rice became aware that Sotera was engaging in procurement fraud and perpetuating a cover up. Sotera is a prime contractor on several contracts in place with the Office of Naval Research ("ONR"), including an ONR Broad Agency Announcement ("BAA") contract, which is structured as a cost plus fixed-fee ("CPFF") contract; and a Communications Electronics Command ("CECOM") BAA contract, which is also a CPFF contract. Sotera also works as a subcontractor on contracts that ONR and CECOM have with other prime contractors, including a Booz Allen Hamilton ("BAH") task, which was structured as a time and materials contract ("T&M") contract.

9. When Mr. Rice started, he reported to Sherry Marcus, Vice President. Ms. Marcus also worked with Jason Flynn, Chief Architect and Deputy Vice President. Beginning in Fall 2012 or earlier, Ms. Marcus and Mr. Flynn began improperly manipulating contracts that Sotera had with their primary contact at ONR, Gary Toth. For example, the ONR BAA contract had a cost overrun; Sotera had incurred costs of approximately $500,000 over the "Not to Exceed" costs under the contract, without securing authorization to exceed the limitations of funds clause in the contract. If Sotera continued submitting invoices for work under this

contract, the invoices would be rejected. Instead of stopping work before incurring this overrun and requesting and waiting for government authorization of additional costs, Ms. Marcus and Mr. Flynn fraudulently shifted the overrun costs from the ONR BAA contract to the CECOM BAA contract and, later, to the BAH task, both of which had funds remaining. Sotera fraudulently charged the government by submitting and receiving payment on invoices which it claimed were related to the CECOM BAA contract and BAH task, for costs which were actually incurred under the overrun ONR BAA contract. In addition, Sotera fraudulently billed for a subcontractor's work; it inappropriately used a subcontractor to perform work on the BAH task, and then, to hide this, since using a subcontractor on the BAH task would not have been allowed, it invoiced those costs under the ONR BAA contract.[1] Ms. Marcus and Mr. Flynn blocked Mr. Rice from having any contact with Mr. Toth; in this way, they were able to conduct their fraudulent activities without Mr. Rice realizing that anything wrong was happening. Ms. Marcus told Mr. Rice that she had performed the correct steps in the procurement process and gotten the necessary approvals, although she had not.

10.     After Mr. Rice was promoted on January 31, 2013, he assumed more responsibility and, as a result, gradually started to realize that something was wrong. He discovered that Sotera was submitting and receiving payment for fraudulent invoices which purported to bill under one contract but were really related to costs incurred under an overrun contract. For example, Mr. Rice noticed names of employees being charged to the CECOM BAA contract although they were not assigned to that contract and he never saw them perform

---

[1] Sotera chose the ONR BAA contract as the best place to "hide" the subcontractor's work on the BAH task because it believed that the subcontractor had been approved to work on the ONR BAA contract and thus the BAH-related charges would blend in. However, Sotera failed to get approval to use the subcontractor to work on the ONR BAA contract, so, by shifting the costs from the BAH task to the ONR BAA contract, it compounded the fraud.

4

work on that contract.[2]  He also realized that costs were being shifted improperly to hide the overrun on the ONR BAA contract, that subcontractor costs on the BAH task were being "hidden" and billed under the ONR BAA contract, and that a subcontractor was added to the ONR BAA contract fraudulently and without customer consent.

11. Beginning on February 22, 2013, Mr. Rice complained several times via email to Charles Ramsay, Senior Director, Tactical Intelligence Program, Kathleen Lossau, Vice President, and other members of Sotera management about the fraudulent billing activities.  He also had several in-person conversations with Mr. Ramsay over the subsequent 2-3 weeks.  Mr. Ramsay did nothing to stop the fraud.  At this point, Sotera's senior management was well aware of the fraud.  In fact, senior management (including Ms. Lossau, Mr. Edwards, and Mr. Haug) referred to the fraudulent subcontractor billing situation  (*i.e.*, billing the subcontractor's work on the BAH task to the ONR BAA contract) as a "drug deal" due to its unethical implications.  However, instead of coming clean with Mr. Toth, they brushed off Mr. Rice's concerns and attempted to cover up the situation.

12. After his complaints were ignored, Mr. Rice complained about the fraud to Chris Smith (then-Director of Human Resources) on March 19, 2013.  Mr. Rice sent an email to Mr. Smith afterwards thanking him for his time.  Mr. Smith did nothing to stop the fraud.  And, on March 20, the *very next day* after Mr. Rice took his complaints to Mr. Smith and less than a month after Mr. Rice began complaining to Mr. Ramsay, Ms. Lossau, and others, Mr. Ramsay and Ms. Lossau began retaliating against Mr. Rice.  On March 20, Mr. Smith forwarded Mr. Rice's thank-you email to Mr. Ramsay, and Mr. Ramsay responded to Mr. Smith that he was going to start thinking about firing Mr. Rice.  Mr. Smith inadvertently forwarded this email chain

---

[2] These charges were also inappropriate because they were pushed through without Mr. Rice's approval, which costs, since this was his project, should have gone through him.

back to Mr. Rice.[3] Shortly afterward, Mr. Ramsay, realizing his email about firing Mr. Rice had been forwarded, called Mr. Rice and told him that Ms. Lossau wanted him fired and there was nothing he could do. Later that night, Mr. Ramsay called Mr. Rice at home and told him that instead of firing him they were going to put him on a Performance Improvement Plan ("PIP"). Mr. Ramsay told him that it was Ms. Lossau who made the decision. On March 21, Mr. Ramsay told Mr. Rice that Ms. Lossau wanted him gone, purportedly because she wanted someone with a stronger technical background who could lead technical execution in addition to Mr. Rice's director duties. No one ever told Mr. Rice why he was being put on a PIP; they never gave or showed to him any documentation of the PIP or any performance issues. This was the first discipline Mr. Rice received throughout his tenure at Sotera.

13. On March 22, 2013, Mr. Rice complained about the fraud and the retaliation to Ms. Broome. He told her that he was pursuing "whistleblower protection with regard to contractor fraud on the government." He provided a detailed description of the fraudulent and improper activities, and told her that he believed the PIP was implemented because he would not assist in the cover up. Mr. Rice also asked her to reassign him to another division so that he did not have to participate in the fraud.

14. Mr. Rice's complaint to Ms. Broome resulted in an investigation of the fraud. The investigation is ongoing. Sotera retained the law firm of Venable LLP ("Venable") to conduct the investigation.

15. Yet even after the complaints and the ongoing investigation, Mr. Ramsay continued to ask Mr. Rice to participate in the cover up of the fraudulent billing activities. On March 25, 2013, Mr. Ramsay asked Mr. Rice to improperly shift costs and expenses from the ONR BAA contract to the BAH task. Mr. Rice refused to do so. On March 26, 2013, Jennifer

---

[3] Also on March 20, Mr. Smith was demoted to a recruiting position.

Tress, a former Technical Lead who reported to Mr. Rice, resigned to avoid participating in the improper activity.[4] She had previously complained to Mr. Ramsay about Mr. Flynn's wasteful and out-of-scope activities, but nothing had been done. Due to the extraordinarily stressful nature of the situation, on March 26, 2013, Mr. Rice went out on medical leave and remained on medical leave until April 5, 2013.

16.     On April 5, 2013, Mr. Rice was interviewed by Paul Debolt and Melanie Totman, two of the Venable attorneys whom Sotera retained to conduct an investigation, for approximately 2.5 hours. Mr. Rice told Mr. Debolt and Ms. Totman that he had retained an attorney for a potential *qui tam* lawsuit. In response to their questions, he gave them a detailed description of the fraudulent and improper activities he observed at Sotera.

17.     Also on April 5, 2013, Sotera's retaliation escalated. Sotera reassigned Mr. Rice to an overhead position on the SSES NexGen contract procurement. Although Mr. Rice had requested a reassignment to a similar position in which he did not have to participate in the fraudulent billing activities and cover up, Sotera did not reassign him to a similar position. Instead, Sotera stripped him of all of his job duties, including all of his supervisory duties, and assigned him administrative/data entry work copying information from a spreadsheet to a PowerPoint presentation. Sotera publicly shamed him by removing him from his private office and placing him in a cubicle in a conference room, which he is forced to vacate whenever the conference room is needed for a meeting. Further, Sotera employees, including Mr. Rice's new supervisor Mr. Edwards, have avoided communicating with Mr. Rice at work whenever possible after they learned of his complaints. Mr. Edwards also now takes several days to reply to Mr. Rice's questions submitted via emails although beforehand he replied within minutes or hours.

---

[4] James Kilgore, Deputy Program Manager, has also complained about Mr. Flynn's wasteful activities. He complained to Mr. Ramsay in or around the end of February 2013, and to Ms. Broome in or around March 2013. Mr. Ramsay and Ms. Lossau decided to fire him in retaliation but later changed the termination to a PIP.

Moreover, overhead positions are frequently targeted for layoffs, and accordingly, Mr. Rice is now at a higher risk for selection for a layoff in the future. Mr. Rice also lost the benefit of having his cell phone paid for by Sotera; when Mr. Rice asked Mr. Edwards if he still had this benefit, Mr. Edwards replied, "Why? No one calls you." In addition, Mr. Rice lost all his direct reports. Even after Mr. Rice's complaints and Sotera's retaliation against him, the fraud is still ongoing. On April 23, 2013, Sotera shifted additional costs from the CECOM BAA contract to the BAH task despite the fact that the costs are not related to the BAH task.

18. On May 2, 2013, the retaliation escalated even further when Mr. Edwards revoked Mr. Rice's NSA TS/SI badge. Without this badge, Mr. Rice will soon lose his security clearance, a very valuable credential in Mr. Rice's industry. The retaliation continued on May 3, 2013, when Ms. Buchanan informed Mr. Rice that Sotera was designating him as a bench overhead employee (an even lower type of overhead employee) at the direction of Mr. Richmond and Mr. Haug. While Sotera may argue that Mr. Rice was transferred for a legitimate, non-discriminatory reason, *e.g.*, that Sotera wanted someone with a stronger technical background who could lead technical execution in addition to Mr. Rice's director duties, the facts demonstrate that this reason is pretextual. First, this reason does not make sense in light of the fact that Sotera had promoted Mr. Rice into his position just approximately nine weeks prior, with full knowledge of his background, skills, and experience. Second, Sotera already has a separate position for a Technical Lead who leads technical execution; leading technical execution is not part of a Director's duties. Third, the timing of Sotera's decision to fire Mr. Rice or put him on a PIP (later changed to the transfer) casts doubt on the veracity of the purported reason, as the decision occurred one day after Mr. Rice complained to Mr. Smith. Neither a transfer, termination, nor a PIP was ever mentioned prior to Mr. Rice's complaints.

Finally, Sotera's purported reason does not explain why it transferred him to a job that is not only a demotion but also drastically below his experience and skill level.

19. As a result of the retaliation, Mr. Rice has experienced extreme emotional distress and elevated blood pressure. His doctors increased the dosage on his medication and prescribed additional medications during the events detailed herein. The stress from the retaliation worsened Mr. Rice's anxiety symptoms. His symptoms became more difficult to control, affecting his ability to carry out his usual employment duties. His symptoms necessitated a medical leave from March 26 to April 5, 2013.

20. In addition, as a result of the retaliation, Mr. Rice has lost his NSA TS/SI badge and is thus in imminent danger of losing his security clearance, a very valuable credential in Mr. Rice's industry. Without a security clearance, Mr. Rice will not be competitive in his industry's job market, and his job prospects will be significantly diminished and perhaps completely destroyed. Moreover, given that Mr. Rice's current position is comprised of low-level data entry work instead of high-level director work, this may affect his ability to obtain employment in the future that is commensurate with his skills and experience.

## V.     FIRST CLAIM FOR RELIEF
### (Retaliation in Violation of the False Claims Act, 31 U.S.C. Section 3730(h))

21. Mr. Rice hereby incorporates the allegations set forth in the foregoing paragraphs as though fully alleged herein.

22. Sotera cannot retaliate against an employee who engages in protected conduct under the FCA, by taking lawful actions in furtherance of an FCA action, including investigation for, testimony for, or assistance in an action filed under the FCA.

23. An employee has engaged in protected conduct when litigation under the FCA is a distinct possibility, when the conduct reasonably could lead to a viable FCA action, or when litigation is a reasonable possibility.

24. An employee need not actually file a *qui tam* suit or even know about the protections of Section 3730(h) to qualify for protection under the retaliation provision.

25. An employee who characterizes the employer's conduct as illegal or fraudulent, or recommends that legal counsel become involved, engages in protected conduct.

26. The FCA "imposes civil liability on any person who knowingly uses a false record or statement to get a false or fraudulent claim paid or approved by the Government, 31 U.S.C. Section 3729(a)(2), and any person who conspires to defraud the Government by getting a false or fraudulent claim allowed or paid, Section 3729(a)(3)." *Allison Engine Co., Inc. v. United States ex rel. Sanders*, 553 U.S. 662, 665 (2008) (internal quotations omitted); *see also Rockwell Int'l Corp. v. United States*, 549 U.S. 457, 463 (2007).

27. An employee who internally reports false or fraudulent claims presented to the government engages in protected activity. United States ex rel. Ackley v. Int'l Bus. Machines, et al., 110 F. Supp. 2d 395, 400 (D. Md. 2000).

28. Based on the facts known to Mr. Rice at the time, his activities could reasonably have led to a viable FCA action.

29. A reasonable employee in the same or similar circumstances as Mr. Rice would have believed that Sotera was defrauding the government.

30. A reasonable employee in the same or similar circumstances as Mr. Rice would have believed that he/she was being pressured to present a "false claim for payment" to the

government. See Harrison v. Westinghouse Savannah River Co., 176 F.3d 776, 785 (4th Cir. 1999) (citing United States v. Rivera, 55 F.3d 703, 709 (1st Cir. 1995)).

31. Sotera would not have made its retaliatory decisions had Mr. Rice not engaged in the protected activities.

WHEREFORE, Mr. Rice respectfully requests that he be awarded the following relief against Sotera:

    a. Economic damages for lost wages and benefits, including two times the amount of back pay, interest on the back pay, and compensation for any special damages sustained as a result of the retaliation and reprisal;

    b. Compensatory (non-economic) damages, including but not limited to damages for emotional distress and loss of reputation;

    c. Punitive damages to punish Sotera for malicious acts of retaliation and to deter it from similar retaliatory conduct toward other employees;

    d. Injunctive or equitable relief, as may be appropriate, to prevent further harm to others and the public caused by Sotera's retaliation against a whistleblower;

    e. Reasonable litigation costs, expert fees, and reasonable attorneys' fees; and

    f. Any other such relief that the Court may deem just and equitable.

## **DEMAND FOR TRIAL BY JURY**

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands a trial by jury in this action.

                                             Respectfully Submitted,

                                        _____/s/_____
                                        Joyce E. Smithey, Esquire
                                        Federal Bar No. 27531
                                        Rifkin, Livingston, Levitan, & Silver, LLC
                                        225 Duke of Gloucester St.
                                        Annapolis, MD 21401
                                        (410) 269-5066 (Phone)
                                        (410) 269-1235 (Facsimile)
                                        jsmithey@rlls.com

Date: June 4, 2013